UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JAIRO MIGUEL ZUNIGA MEDINA,

               Petitioner,

     v.

JULIO HERNANDEZ, *et al.*,

               Respondents.

Case No. C26-2344-MLP

ORDER

Petitioner Jairo Miguel Zuniga Medina, through counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241, arguing that his redetention by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, is unlawful and seeking immediate release as well as injunctive relief related to any future redetention. (Dkt. # 1.) Petitioner submitted a sworn declaration (dkt. # 2), as did his counsel, Rowan Laidlaw (dkt. # 3). Respondents filed a return (dkt. # 8), supported by a sworn declaration from U.S. Department of Homeland Security ("DHS") Deportation Officer Ian Bloom (dkt. # 9), and an unsworn declaration from their counsel, Katherine Collins (dkt. # 10). Petitioner filed a traverse (dkt. # 12), together with a second sworn declaration from his counsel (dkt. # 13).

ORDER - 1

Having reviewed the parties' submissions and the governing law, the Court GRANTS in part the petition (dkt. # 1).[1]

## I.    BACKGROUND

Petitioner is a native and citizen of Colombia who entered the United States on December 27, 2023, near Eagle Pass, Texas. (Bloom Decl., ¶ 3.) Border Patrol detained him and released him the next day on an Order of Release on Recognizance ("OREC") issued "[i]n accordance with section 236 of the Immigration and Nationality Act[.]" (*Id.*, ¶ 4; First Laidlaw Decl., ¶ 5, Ex. C.) He was served with a Notice to Appear ("NTA") charging inadmissibility under the Immigration and Nationality Act ("INA") and directing him to attend an immigration hearing on February 12, 2025. (Bloom Decl., ¶ 4; First Laidlaw Decl., ¶ 4, Ex. B.)

The OREC required enrollment in an Alternative to Detention ("ATD") program with weekly location reporting. (Bloom Decl., ¶ 5.) Petitioner states he was also required to attend monthly home and office check-ins in Tukwila and to wear a GPS ankle device. (Medina Decl., ¶ 12.) While released, he applied for asylum, obtained work authorization, and settled in the Seattle area with his wife and young child. (*Id.*, ¶¶ 7-8.)

On May 8, 2026, ICE arrested Petitioner after he reported for a pre-scheduled appointment at the Tukwila ATD office. (Medina Decl., ¶ 13.) He states he was separated from his wife and child, asked his name and language, and then arrested by ICE officers without being told the reason. (*Id.*, ¶ 15.) Officer Bloom states ICE detained Petitioner due to ATD violations, including moving to Utah in 2024 without permission, failing to appear for a January 15, 2025, office visit, and a GPS monitor that "missed a routine callback for a sixth time in the preceding nine months." (Bloom Decl., ¶¶ 6-7, 9-10.) DHS administrative records, however, reflect that

---

[1] The parties consented to proceed before the undersigned Magistrate Judge. (Dkt. # 11.)

ICE informed Petitioner he was under arrest "based on his final order of removal." (Collins Decl., ¶ 2, Ex. F at 3.) Petitioner was transported to the NWIPC, where he remains detained. (Bloom Decl., ¶¶ 10, 13.)

On July 1, 2026, an immigration judge denied relief and ordered Petitioner removed to Colombia. (Bloom Decl., ¶ 11.) The order is not in the record. Petitioner appealed to the Board of Immigration Appeals on July 17, 2026. (Second Laidlaw Decl., ¶ 4.)

On July 7, 2026, Petitioner filed this habeas petition. (Dkt. # 1.) He argues that redetention without prior notice and an opportunity to be heard before a neutral decisionmaker violated the Fifth Amendment and created a high risk of erroneous deprivation of his liberty. (*Id.*, ¶¶ 41-46, 53-55.)

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are "in custody in violation of the Constitution or laws or treaties of the United States[.]" *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

## III.    DISCUSSION

Respondents argue Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) and that his redetention satisfies *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). (Dkt. # 8 at 7-10.)

### A.    Statutory Detention Authority

Petitioner does not brief the statutory basis for detention but disputes Respondents' § 1225(b) classification in reply. (Dkt. # 12 at 4.) Although his claim is constitutional,

ORDER - 3

Respondents seek to justify mandatory detention under § 1225(b)(2). (Dkt. # 8 at 1-4, 6-7.) The Court rejects that position.

INA §§ 235-36, codified at 8 U.S.C. §§ 1225-26, govern detention. Section 1226(a) sets the default rule permitting discretionary detention of noncitizens "already present in the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). Section 1225 applies to "applicants for admission," *i.e.*, a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). Applicants for admission are generally subject to mandatory detention under § 1225(b), with release only on parole "for urgent humanitarian reasons or significant public benefit[.]" 8 U.S.C. § 1182(d)(5)(A); *Jennings*, 583 U.S. at 287.

Relying on out-of-circuit authority and a 2025 DHS policy shift, Respondents contend Petitioner falls under § 1225(b)(2)(A) as an "applicant for admission" who is also "seeking admission." (Dkt. # 8 at 3-4.) That interpretation was rejected in *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1329 (W.D. Wash. 2025), and the Ninth Circuit has since affirmed, holding that noncitizens present without admission apprehended in the interior are subject to § 1226, not § 1225(b)(2)(A). *Rodriguez Vazquez v. Bostock*, --- F.4th --- , 2026 WL 2196424, at *3 (9th Cir. July 30, 2026).

Respondents' reliance on *Blanche v. Lau*, 609 U.S. ---, 146 S. Ct. 1981 (2026), and *Mullin v. Al Otro Lado*, 609 U.S. ---, 146 S. Ct. 2079 (2026), is misplaced. *Blanche* addressed parole under § 1182(d)(5)(A) and a noncitizen "regarded" as seeking admission under § 1101(a)(13)(C)(v). 146 S. Ct. at 1987. *Mullin* addressed when a noncitizen "arrives in the United States[,]" not at issue here, and distinguished "applicants for admission" from those

ORDER - 4

"otherwise seeking admission." 146 S. Ct. at 2087 (citing § 1225(a)(3)). The Ninth Circuit likewise rejected conflating those terms. *Rodriguez Vazquez*, 2026 WL 2196424, at *16.

The government's treatment of Petitioner since 2023 also points to § 1226(a). He was released on recognizance under § 236, not on humanitarian parole. (Bloom Decl., ¶ 4; Collins Decl., ¶ 2, Ex. E.) The custody determination form referenced § 236. (Collins Decl., ¶ 2, Ex. C.) He then lived in the United States under ATD conditions for nearly two and a half years. Nothing indicates he was on parole or "seeking admission" during that time. *See Del Valle Castillo v. Wamsley*, 2025 WL 3524932, at *7 (W.D. Wash. Nov. 26, 2025). Section 1226(a) governs.

**B.**    ***Mathews* and Due Process**

Due process protections extend to all persons within the United States, including noncitizens. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Procedural due process requires meaningful notice and a genuine opportunity to be heard before the government infringes a protected liberty interest. *Mathews*, 424 U.S. at 332. Courts apply *Mathews* by weighing: (1) the private interest affected; (2) the risk of erroneous deprivation under existing procedures and the value of additional safeguards; and (3) the government's countervailing interest, including fiscal and administrative burdens. *See Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206-07 (9th Cir. 2022); *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1321 n.4 (W.D. Wash. 2025).

       *1.*    *Private Interest*

Freedom from physical confinement is a substantial liberty interest. *See Zadvydas*, 533 U.S. at 690; *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025). A person previously released is deprived of that interest upon renewed detention. *See Makuey v. Scott*, 2025 WL 3640900, at *4 (W.D. Wash. Dec. 16, 2025). This factor favors Petitioner.

ORDER - 5

2.      *Risk of Erroneous Deprivation*

The risk of error was high, as shown by the government's incorrect reliance on § 1225(b) and inconsistent records regarding the basis for redetention. Respondents do not dispute that Petitioner received no prior notice or opportunity to challenge detention. (*See generally* dkt. # 8.) They argue detention was mandatory and ATD/OREC violations reduced the risk of error. (*Id.* at 9.) The Court rejects the first point, and the second is undermined by DHS's records.

DHS Form I-213 states ICE detained Petitioner on May 8, 2026 "based on his final order of removal." (Collins Decl., ¶ 2, Ex. F at 3.) No final order existed until nearly two months later. (Bloom Decl., ¶ 11.) Although the I-213 lists ATD violations, it does not state they were the basis for redetention. (Collins Decl., ¶ 2, Ex. F.) Courts recognize that redetention based on unadjudicated allegations carries a high risk of error and that pre-deprivation hearings have substantial value. *See*, *e.g.*, *Awa v. Noem*, 2026 WL 943593, at *2 (W.D. Wash. Apr. 8, 2026); *Singh v. Noem*, 2026 WL 265670, at *5-6 (W.D. Wash. Feb. 2, 2026). This factor favors Petitioner.

3.      *Governmental Interest*

The government has legitimate interests in enforcing immigration laws, protecting the community, and ensuring appearance. But Respondents identify no concrete way in which providing a brief pre-deprivation custody hearing would materially impede those interests. Custody and bond hearings are routine, and courts have found the incremental burden modest compared to the risk and consequences of erroneous detention. *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019).

Respondents contend a pre-deprivation hearing would have increased absconding risk due to alleged ATD noncompliance. (Dkt. # 8 at 10.) Yet, despite alleged violations dating to

ORDER - 6

July 2024 (Collins Decl., ¶ 2, Ex. F at 3), the record shows Petitioner continued monthly reporting, and ICE took no action until he voluntarily appeared for a scheduled appointment, when ICE "discovered" the violations during routine checks. (*Id.*) Respondents provide no evidence that Petitioner posed a flight risk warranting the absence of pre-deprivation process. This factor also favors Petitioner.

All three *Mathews* factors favor Petitioner. Habeas relief is therefore warranted. Given the lack of lawful process at the outset and the absence of exigent circumstances, release is the appropriate, constitutionally required remedy. *See*, *e.g.*, *E.A. T.-B.*, 795 F. Supp. 3d at 1324; *Zhu v. Genalo*, 798 F. Supp. 3d 400, 415 (S.D.N.Y. 2025).

### C.    Injunctive Relief

Petitioner seeks a permanent injunction barring Respondents from redetaining him without written notice and a prior hearing at which Respondents must prove, by clear and convincing evidence, that he is a flight risk or danger and that no alternative will suffice. (Dkt. # 1, ¶ 56.) To obtain a permanent injunction, a party must show "some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Although Petitioner has shown his redetention was unlawful, the present record lacks sufficient legal authority and factual development to establish a specific, real, and immediate threat of future redetention without process. The request for injunctive relief is therefore denied without prejudice.

### IV.    CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

(1)    Petitioner's petition for writ of habeas corpus (dkt. # 1) is GRANTED in part.

ORDER - 7

        a.     Within **twenty-four (24) hours**, Respondents shall release Petitioner from immigration detention under conditions consistent with applicable statutory and regulatory authority; and

        b.     Within **two (2) business days**, Respondents shall file a status report with the Court confirming Petitioner's release.

(2)     Petitioner's request for permanent injunctive relief is DENIED without prejudice.

(3)     The Court will entertain any post-judgment motion for attorney's fees, as requested in the petition. Any fee petition must be filed within the deadline set by the Equal Access to Justice Act, 28 U.S.C. § 2412. The parties are reminded of the meet-and-confer requirement under this Court's chambers procedures.

Dated this 3rd day of August, 2026.

MICHELLE L. PETERSON
United States Magistrate Judge

ORDER - 8